UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Thomas AIMS BACK,
Defendant-Appellant.

No. 77–2662.

United States Court of Appeals,
Ninth Circuit.

Jan. 4, 1979.

William George Harris (argued), Missoula, Mont., for defendant-appellant.

Robert T. O'Leary, U. S. Atty. (argued), Butte, Mont., for plaintiff-appellee.

Before MERRILL and TANG, Circuit Judges, and TAYLOR, District Judge.*

TAYLOR, District Judge:

Appellant, a member of the Blackfeet Indian Tribe, has appealed from his conviction of raping Jenny Lynn Makes Cold Weather, an Indian woman, in violation of 18 U.S.C. §§ 2031 and 1153. The issues raised by appellant are: (1) whether the trial court erred in permitting Beverly Jackson, another Indian woman, to testify in regard to appellant's activities relating to his intercourse with her, forcibly and without her consent, on the same night and subsequent to the offense with which appellant was charged; (2) whether the trial court erred in admitting into evidence a statement made by appellant to an investigating agent while appellant was in custody without a showing that appellant knowingly and intelligently waived his *Miranda* rights; and (3) whether the trial court erred in failing to dismiss the indictment for failure of the prosecution to establish by the evidence an essential element of the crime charged, i. e., penetration.

After carefully reviewing the entire record in this case, we believe that serious prejudicial error was committed at trial and that appellant is entitled to a new trial.

The indictment against appellant, Robert Aims Back (Robert), charged that on or about the 27th day of March, 1977, within the exterior boundaries of the Blackfeet Indian Reservation, he had carnal knowledge of a female named Jenny Lynn Makes Cold Weather (Jenny Lynn) forcibly and against her will.

In the same indictment, Leroy Aims Back (Leroy) was charged in one count with having committed the same offense on the same date against a female known as Teresa Beverly Aims Back, and in another count of the indictment Leroy was charged with an identical offense on the same date with Jenny Lynn.

Robert was convicted on the one charge of forcibly raping Jenny Lynn. Leroy was convicted of forcibly raping Jenny Lynn, but not convicted on the count charging him with raping Teresa Beverly Aims Back, hereinafter referred to as Beverly Jackson. Although Beverly Jackson testified that Robert raped her after Jenny Lynn, it is rather significant that he was not charged with that offense.

* For the District of Idaho, sitting by designation.

Beverly Jackson who, according to her testimony, also used the name Teresa Beverly Aims Back, was the first witness for the prosecution. She testified in detail in regard to the activities of Robert, Leroy, Jenny Lynn and herself on the night of March 27, 1977, and the early morning of the next day up to and including the events that occurred at the time of the offenses with which Robert and Leroy were each convicted. It is clear from her testimony that there was considerable drinking of alcoholic beverages by at least the young men and herself, and that they became quite intoxicated. It does not appear that Jenny Lynn was doing much drinking, if any, but that she did go along with them in a pickup truck into a remote area of the reservation.

Beverly Jackson (Jackson) testified first that she was forced by Leroy to have intercourse with him against her will. Thereafter, she was not only permitted to testify that Robert raped Jenny Lynn, but, over the objection of counsel for Robert, she was also permitted to testify that Robert forced her to have intercourse with him against her will. In overruling the objection, the court stated: "Well this is all part of the events that happened on this occasion. I will caution the jury that the defendant is not—the defendant Robert Aims Back is not charged with any crime with respect to this witness, and so you can't consider this as a crime charged. You may accept the evidence for what value it may have in just establishing the whole pattern of the evening".

Appellant strenuously argues that the admission of Jackson's testimony was highly prejudicial and of no probative value in regard to the offense with which he was charged. He also contends that the trial court's cautionary instruction was not adequate.

The government asserts that Jackson's testimony was admissible in the discretion of the trial court under Rule 404(b) of Fed. Rules of Evidence. Also, that the cautionary instruction given by the court was sufficient to protect the rights of appellant.

In considering whether the testimony of Jackson should have been admitted over the objection of appellant, we must determine whether it had any probative value in regard to the offense with which appellant was charged, i. e., did it show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in regard to the prior offense against Jenny Lynn.

■ While Rule 404(b) of the Federal Rules of Evidence allows the admission of such evidence, Rule 403 requires the trial court to weigh the probative value of the evidence against the danger of "unfair prejudice". See *United States v. Curtis*, 568 F.2d 643, 654 (9th Cir. 1978); *United States v. Butcher*, 557 F.2d 666, 670 (9th Cir. 1977). "Unfair prejudice" is defined in the Notes of the Advisory Committee on the proposed Federal Rules of Evidence as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one". Evidence, even though it may be otherwise admissible, should be excluded where it tends to prove only criminal disposition. *See United States v. Brown*, 562 F.2d 1144 (9th Cir. 1977); *United States v. Riggins*, 539 F.2d 682, 683 (9th Cir. 1976).

■ The case law cited by the government is not dispositive of this issue. In each of those cases, the evidence of other crimes or acts clearly had probative value as to an essential element of the offense, i. e., knowledge, intent, etc. Here, the probative value of the testimony in question as to the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident is grossly overshadowed by the propensity of the testimony to prove only criminal disposition. The defendant was thus denied a fair opportunity to defend against the charge involving only Jenny Lynn. *Cf. United States v. Hearst*, 563 F.2d 1331, 1335 (9th Cir. 1977).

It is difficult to conceive how the activities of Robert and Jenny Lynn were necessarily the same or similar to those of Robert

and Jackson. In the situation with Jackson, Robert may have had intercourse with her, as she testified, but that does not prove or show that prior to that affair, Robert forced Jenny Lynn to have intercourse with him without her consent. Admittedly, the testimony of Jackson was prejudicial and the trial court had to balance the relevance and probative value of that evidence against the prejudicial effect it might have on the jury. Rule 403, Fed.Rules of Evidence. We believe the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and should have been excluded. In cautioning the jury, the court did not state the specific purpose for which the evidence was being admitted, but did state that it could be accepted for "what value it may have in just establishing the whole pattern of the evening". Although we do not know how this evidence was considered by the jury, it seems reasonable to believe that in view of the court's instruction, the jury came to the conclusion that if Robert raped Jackson, he also raped Jenny Lynn, even though he was not charged with the former offense. This evidence was especially prejudicial since there is no evidence in the record to show that Robert forced Jenny Lynn to have intercourse against her will, other than her own testimony, and no evidence of an essential element of the offense, i. e. penetration, except her own testimony. We have no way of knowing whether Robert would have been convicted without the objectionable testimony of Jackson. Since the testimony of Jackson was highly prejudicial and had very little, if any, probative value, a serious question is raised whether the trial court actually did the balancing required by Rule 403. The trial court's comment and its failure to give a proper limiting instruction highlights the inadequate consideration in regard to the probative value versus the prejudicial effect of the questioned evidence. The trial court's statement that the jury can consider the evidence for whatever it is worth did not limit or specify the purpose for which the evidence was admitted as required by Rule 404(b). From this statement, the jury could infer that if ap-

pellant raped Jackson, he also raped Jenny Lynn, an inference which Rule 404(b) specifically intends to prohibit. In these circumstances, it appears that appellant was not accorded a fair trial.

The case of *United States v. Sangrey*, 586 F.2d 1312, (9th Cir., 1978), recently decided by another panel of this court, involved a similar issue to the one we have here. It may be asserted that the holding in *Sangrey* is dispositive of this case but in our opinion, it is distinguishable.

In *Sangrey*, the appellant was charged and convicted of rape under 18 U.S.C. §§ 1153 and 2032. He was charged with the rape of one woman (Joanne). During the prosecution's case-in-chief, another woman (Junia), who also was allegedly raped by appellant on the same occasion, was not called to testify. During the trial, appellant took the stand and claimed he was not in the vicinity of the alleged rapes and denied advances to either girl. His testimony was inconsistent with his previous statement and, on rebuttal, the prosecution called Junia and, over the objection of defense counsel, she was allowed to testify as follows:

> that several young men raped her, one knocking her unconscious, and that, upon awakening, she remembered "Denis" [Sangrey] getting off and saying he was going over to the other girl.

In *Sangrey*, no serious question was raised concerning the clear probative value of the evidence since the testimony established the appellant's opportunity and inferentially his intent to rape Joanne, the woman he was charged with raping. The testimony was probative and as the court correctly pointed out, "Junia could only testify to his (Sangrey's) remark by telling about his attack upon her". The situations in this case and *Sangrey* are easily distinguishable. In *Sangrey* the testimony was clearly probative, while in this case the objectionable testimony had questionable probative value. In both *Sangrey* and this case, the testimony regarding the rape with which the defendants were not charged causes the "unfair prejudice" problem. In *Sangrey*, had

the court prevented the witness from testifying that she had been raped by the appellant, the balance of her testimony would have been meaningless. In *Sangrey* relevant and probative testimony was that concerning the appellant's statement to the witness that "he was going over to the other girl [Joanne]". In order for the jury to understand this statement and the time and place it was made, the witness had to be permitted to explain the circumstances. In the case here, the situation was much different. The testimony of Jackson that the appellant raped her was not necessary. It was appropriate to allow her to testify about the events of the evening up to and including what she observed taking place between appellant and Jenny Lynn but to allow the witness to continue was completely unnecessary and highly prejudicial to appellant. In addition, here there is the question of the trial court's instruction. In *Sangrey* no instruction was requested or given. In this case the court gave an instruction but the instruction enhanced the prejudicial effect of the objectionable testimony.

In summary, we agree with the reasoning and conclusion in *Sangrey* and believe our decision is consistent with that opinion. It appears that no clear lines can be drawn between admissible and inadmissible evidence under Rule 404(b) in view of Rule 403. The admissibility of evidence of other crimes, wrongs, or acts, other than charged, must be decided on the facts and circumstances in each particular case. Any attempt to articulate rules more precise than Rule 403 and 404(b) would be presumptuous and inefficacious. It must be remembered, however, that evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value. If the trial court, in its discretion, finds that the evidence is admissible under the language of Rule 404(b) and 403, a limiting instruction is important. In *Sangrey* the court stated that if a cautionary instruction is not requested it is not reverseable error if one is not given, however, the court did say that it would have been appropriate for the court, *sua sponte*, to give a limiting instruction.

Should the court give such an instruction, either on request or on its own motion, the court must be careful to instruct the jury correctly as to the limited purpose for which the evidence is admitted. This was not done here.

In our opinion, it is unnecessary for this Court to discuss the remaining issues raised by appellant since we do not believe either of them has any merit.

Reversed and remanded for a new trial.

MERRILL, Circuit Judge, dissenting:

I dissent. I agree with the district court that Jackson's testimony as to her rape by appellant was properly admitted as part of the sequence of events during which the charged offense was committed. The witness was asked to describe what had occurred that evening; testimony respecting her rape served to put the charged offense in its factual setting. It was not proof that the accused had misbehaved on another occasion, from which the jury was invited to infer that he had misbehaved on this occasion. It was proof of what he actually did on this occasion. The evidence thus is clearly admissible under Rule 404(b), Federal Rules of Evidence, being offered for a purpose other than proof of character. It was relevant because it bore directly on the charged offense.

With relevance thus established the question is whether under Rule 403, Federal Rules of Evidence, the prejudice to the accused outweighed the probative value attendant on presenting a clear picture of the circumstances under which the charged offense was committed. On that question I do not find this case distinguishable from *United States v. Sangrey*, 586 F.2d 1312 (9th Cir.) Under the standards set in *Sangrey*, the balance struck here by the trial judge did not amount to abuse of discretion.

As to cautionary instructions, in neither this case nor *Sangrey* was such an instruction requested. In our case one was given when the testimony was admitted. It may not have been the clearest of cautions, but if the failure to caution in *Sangrey* was not

plain error, *a fortiori* the failure to caution further here was not.