**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Guinn Dutton HODGES,**
**Defendant-Appellant.**

No. 83–5236.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 4, 1984.

Decided Sept. 12, 1985.

Robert C. Bonner, U.S. Atty., Robert L. Brosio, Daniel J. Broderick, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Roger Agajanian, Barry A. Bisson, Huntington Beach, Cal., for defendant-appellant.

Before WALLACE, FLETCHER, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Appellant Guinn Hodges was convicted after a jury trial of conspiracy to defraud lending institutions in violation of 18 U.S.C. § 371. Hodges appeals from his conviction alleging that: (1) the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence; (2) his conviction was not supported by substantial evidence; (3) the prosecutor's closing argument contained prejudicial misstatements of material evidence; and (4) the district court committed reversible error in admitting evidence that Hodges had, subsequent to the alleged conspiracy, attempted to extort $5,000 from one of his co-conspirators. Although we find the evidence presented to be legally sufficient to support the jury's verdict, we agree with Hodges' claim that the admission of the testimony relating to the extortion attempt constituted reversible error.

## I. FACTS

Hodges, along with four co-defendants, was accused of participating in a conspiracy to defraud federally insured savings and loan associations. The scheme was allegedly carried out as follows. Paula Johnson, a real estate agent, located the residential properties on which the trust deed loans were to be based. Alex Logan and Deborah Toler posed as borrowers for each of the loans. Donald Fisher, a mortgage broker, selected the lending institutions and obtained the necessary loan applications. The indictment alleged that Fisher, Logan, and Toler knowingly provided false information on the loan applications. The indictment accused Hodges of agreeing to verify the false information contained in the loan applications if requested by the lending institutions. The indictment alleged that the acts in furtherance of the conspiracy were committed during the period "[b]eginning on or about November 1, 1981, and continuing to and including April 14, 1982." No overt act in connection with the conspiracy was alleged to have occurred subsequent to April 14, 1982.

Johnson, Logan, Toler, and Fisher each pled guilty to the charges listed in the indictment and testified at Hodges' jury trial. Johnson and Fisher testified that Hodges knowingly and actively participated in the conspiracy by: (1) assisting in the forgery of credit approval forms and of a particular profit and loss statement that were submitted to the banks in support of the loan applications; (2) delivering the fraudulent loan documents to the lenders and the fictitious borrowers; and (3) receiving over $5,000 from the loan proceeds for agreeing to verify the false information in the loan applications if requested by the banks.

Hodges' principal defense was that he was ignorant of the fraudulent nature of the scheme being carried out around him. He testified that although he had procured the necessary credit approval forms, delivered the loan documents, and answered a telephone as directed, he performed each of these acts without any knowledge of the illegal nature of the loan operation.

After a four-day jury trial, Hodges was found guilty of the conspiracy offense for which he was charged. The district court denied his motion for a new trial. Hodges appeals.

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

Hodges contends that the evidence produced at trial was insufficient, as a matter of law, to sustain his conviction. We address this claim before examining Hodges' specific allegations of trial error because "the Double Jeopardy Clause bars retrial after reversal for evidentiary insufficiency, but not after reversal for trial error." *United States v. Harmon*, 632 F.2d 812, 814 (9th Cir.1980) (per curiam); *see also Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982); *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). We have recognized that the existence of other grounds for reversal does not relieve an appellate court of the need to first review the sufficiency of the evidence. *See United States v. Bibbero*, 749 F.2d 581, 586 (9th Cir.1984); *see also Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 104 S.Ct. 1805, 1820–21, 80 L.Ed.2d 311 (1984) (Brennan, J., concurring)). Thus, if we were to agree with Hodges' allegation of evidentiary insufficiency, the case could not properly be remanded for a new trial and it would be unnecessary to examine Hodges' claims of trial error.

Where, as here, a defendant both challenges the sufficiency of the evidence and presents allegations of trial error, we consider *all* of the evidence presented at trial in evaluating the legal sufficiency of the evidence. *Bibbero*, 749 F.2d at 586 n. 3; *Harmon*, 632 F.2d at 814. In *Harmon*, we explained why an appellate court faced with a claim of insufficient evidence should not be limited to a consideration of only properly admitted evidence: "It is impossible to know what additional evidence the government might have produced had the faulty evidence been excluded at trial, or

what theory the government might have pursued had the evidence before the jury been different." 632 F.2d at 814. Therefore, in reviewing Hodges' challenge to the sufficiency of the evidence, we examine all of the evidence presented in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See, e.g., United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir.1984) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ).

 The essential elements of conspiracy are "an agreement between two or more persons to engage in criminal activity, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense." *United States v. Abushi,* 682 F.2d 1289, 1293 (9th Cir.1982). Hodges claims that he had no knowledge of the fraudulent nature of the loan operation. Two of his co-conspirators testified, however, that Hodges knowingly and wilfully participated in the conspiracy. The ultimate question before the jury was one of credibility—whether to accept Hodges' testimony or that of his co-conspirators. On appeal, Hodges vigorously attacks the credibility of his co-conspirators' testimony by pointing to numerous grounds of potential bias. Hodges' challenges to the veracity of the prosecution's witnesses are misplaced; questions of credibility are for the jury to decide and are generally immune from appellate review. *See United States v. Awkard,* 597 F.2d 667, 671 (9th Cir.), *cert. denied,* 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 *and* 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 383 (1979); *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973), *cert. denied,* 416 U.S. 959, 94 S.Ct.

1976, 40 L.Ed.2d 310 (1974). Our review is limited to a determination of whether, after viewing all of the evidence and inferences drawn therefrom in the light most favorable to the government, a rational trier of fact could have found that Hodges was aware of the illegal nature of the conspiracy at the time that he participated in it. Thus viewed, the government's evidence was sufficient to support the verdict.

**B.** *The District Court Erred in Admitting Evidence of Hodges' Subsequent Wrongdoing*

 Hodges contends that the district court committed reversible error in admitting evidence that approximately five months after the last act of the conspiracy had ended he attempted to extort money from one of his alleged co-conspirators. Over Hodges' objection, the district court permitted Paula Johnson to testify regarding a September, 1982 conversation that he allegedly had with her. During that conversation Hodges allegedly attempted to extort $5,000 from Johnson by offering to provide favorable testimony regarding her involvement in the scheme to the FBI and to remove her name from a "hit list" he intended to supply to a group of his murdered brother's less savory friends.[1] In addition, Johnson's mother, who was in the restaurant where the meeting took place but did not hear the discussion, was permitted to testify that both she and her daughter were "terrified" by Hodges' extortionate threat. The district court's decision to permit the government to introduce evidence of Hodges' extortion attempt may not be disturbed on appeal absent an abuse of discretion. *See, e.g., United States v. Soulard,* 730 F.2d 1292, 1296 (9th Cir.

---

1. Paula Johnson testified as follows:

 He told me that he was coming the next day to talk to the FBI, and that if I would give him $5,000, he would paint a pretty picture of myself and my participation in the transaction to the FBI, and he further told me that there were people who were friends of his brother from New York that were not nice people; they knocked on your house in the middle of the night; they hurt you; they hurt your children, and that they had requested from him to supply them with a list of people that he felt were being uncooperative regarding some things that happened after his brother's death, and that if I would give him $5,000, he would see that my name was taken off this list.

1984). We find that such an abuse occurred here.

▮ Evidence of other crimes, wrongs, or similar acts may not be introduced to show that the defendant has a "bad character" and is therefore likely to have committed the offense for which he is charged. Such evidence may, however, be introduced for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b).[2] Although our decisions have recognized that Rule 404(b) is one of "inclusion," *see United States v. Bradshaw*, 690 F.2d 704, 708 (9th Cir.1982), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); *United States v. Rocha*, 553 F.2d 615, 616 (9th Cir.1977) (per curiam), we have emphasized consistently that evidence of extrinsic acts may not be introduced unless the government establishes its relevance to an actual issue in the case. *See, e.g., United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir.1982); *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1108 (9th Cir. 1979); *see also* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[08], at 404–49 (1982).

▮ Furthermore, even when all of the other requirements of "extrinsic acts" evidence are met, the evidence may be accepted only if, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant. Fed.R.Evid. 403;[3] *see United States v. Bailleaux*, 685 F.2d 1105, 1110 (9th Cir.1982); *United States v. Green*, 648 F.2d 587, 592–93 (9th Cir.1981) (per curiam). We have emphasized that extrinsic acts evidence "is not looked upon with favor," *United States v. Herrera-Medina*, 609 F.2d 376, 379 (9th Cir.1979); *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir.1979), and that its use "must be narrowly circumscribed and limited." *Bailleaux*, 685 F.2d at 1109. Our reluctance to sanction the use of evidence of other crimes stems from the underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is. Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing. *See id.;* E. Cleary, *McCormick on Evidence* § 190, p. 447 (rev. ed. 1972); 1A J. Wigmore, *Wigmore on Evidence* § 58.2, at 1212–13 (3d ed. Tiller rev. 1983).

In this case it is clear that the probative value, if any, of Johnson's testimony describing the alleged extortion attempt is substantially outweighed by the danger of unfair prejudice to Hodges resulting from its use. The government contends that evidence of the extortion attempt is relevant to the ultimate issue in the case—whether Hodges was, in fact, aware of the illegal nature of the loan operation at the time that he performed the overt acts in furtherance of the scheme. It asserts that the evidence is probative of Hodges' (1) "attempt at concealment of the criminal enterprise" and (2) "consciousness of guilt."

We find the probative value of the testimony describing the alleged extortion attempt to be attenuated. The government's first suggestion is wholly without merit. The extortion attempt does not suggest an

---

**2.** Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**3.** Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

effort by Hodges to conceal his own participation in the conspiracy, but at most a willingness to help conceal Johnson's. As to the government's second suggestion, we have considerable difficulty with the argument that the challenged evidence is illustrative of Hodges' consciousness of guilt.

■ The government claims that Hodges' offer to "paint a pretty picture" of Johnson's involvement in the conspiracy to the FBI is probative of Hodges' awareness of the illegal nature of the conspiracy at the time that he participated in the loan transaction. Although the offer may be illustrative of Hodges' state of mind at the time that the offer was made, there is some question whether it is probative of what the state of his mind was some five months earlier.[4] We further question whether Hodges' cryptic offer to "paint a pretty picture" of Johnson's involvement in the conspiracy can, in any event, properly be viewed as probative of Hodges' consciousness of his own guilt. While it is not entirely clear whether the ambiguous offer manifests an actual awareness on Hodges' part that Johnson had engaged in illegal conduct, it is even less clear that it in any way manifests a recognition by Hodges that his own participation in the loan venture was unlawful. In addition, there is a separate aspect to the alleged extortion attempt, the "hit list" threat, that is wholly unrelated to the conspiracy for which Hodges was being tried. We fail to understand, and the government has not suggested, how the "hit list" threat can possibly be viewed as an effort at concealment, a manifestation of consciousness of guilt, or otherwise probative of any material issue in the case. In sum, we find Johnson's statement regarding Hodges' alleged extortion attempt to be of slight relevance, at best.

While the portion of Johnson's testimony at issue here is of dubious probative value, we have little doubt that it is highly and unfairly prejudicial. Testimony as to Hodges' willingness to resort to illegal extortionate tactics involving both a threat of physical harm and a promise to make false statements to government officials is the type of evidence that "makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Bailleaux*, 685 F.2d at 1111. Evidence of Hodges' extortion attempt directs the jury's attention away from the offense for which he is being tried to a different act of a most serious nature. The testimony at issue creates a significant danger that the jury will draw the impermissible inference that because Hodges acted ruthlessly and with greed on a much later occasion, he must have knowingly committed the earlier fraudulent acts. That is precisely the inference that Federal Rule of Evidence 404(b) is designed to prevent. *See, e.g., id., Aims Back*, 588 F.2d at 1285. Because we are of the firm conviction that the testimony relating to Hodges' extortion attempt is both of slight probative value and highly and unfairly prejudicial, we conclude that it should have been excluded.

Assuming that the district court's error was "non-constitutional," *see, e.g., Soulard*, 730 F.2d at 1296, we cannot say that it was "harmless." Fed.R.Crim.P. 52(a). In order to do so, we would have to determine that it is more probable than not that the erroneous admission of the evidence did not affect the jury's verdict. *See, e.g., Soulard*, 730 F.2d at 1296; *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir.1977). Our determination is to the contrary.

As we stated earlier, the ultimate question before the jury was whether to believe Hodges when he claimed that he was un-

---

**4.** Our decisions have consistently recognized that proximity in time is a factor that must be considered in assessing the potential relevancy of other related acts. *See, e.g., United States v. Multi-Management, Inc.*, 743 F.2d 1359, 1364 (9th Cir.1984); *Herrera-Medina*, 609 F.2d at 379; *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir.1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977).

aware of the fraudulent nature of the loan operation at the time of his participation in it. The principal government witnesses who testified to Hodges' knowing participation in the illegal venture were two of his alleged co-conspirators, Paula Johnson and Donald Fisher. Hodges vigorously argued before the jury that both Johnson and Fisher had a pronounced motive to present untruthful testimony in favor of the prosecution; each had pled guilty and was awaiting sentence at the time of Hodges' trial. The ultimate verdict reflects the fact that the jury found the testimony of Johnson and Fisher to be more credible than that of Hodges.

The improperly admitted testimony may well have been highly damaging to Hodges' credibility in the eyes of the jury. Evidence that Hodges was capable of resorting to a ruthless extortion attempt is likely to have influenced a rational juror's appraisal of Hodges' claim that he was an innocent clerk who was wholly unaware of the fraudulent nature of the scheme being carried out around him. Accordingly, we cannot say that it is more probable than not that the evidence did not affect the jury's verdict.

### C. *Hodges' Other Claims*

In view of our conclusion that a retrial is necessary for the reasons expressed in section B, *supra,* we need not determine whether the district court erred in denying Hodges' motion for a new trial based on allegations of newly discovered evidence. Upon retrial, Hodges will have the opportunity to timely present such evidence.

■ We also need not consider Hodges' claim that the prosecutor's closing argument contained prejudicial misstatements of material evidence. We note, however, that Hodges did not object to the alleged misstatements of evidence at trial and that allegations of prosecutorial misconduct, raised for the first time on appeal, are reviewed under the "plain error" standard. *See, e.g., United States v. Birges,* 723 F.2d 666, 672 (9th Cir.), *cert. denied,* —— U.S.

——, 104 S.Ct. 1926, 80 L.Ed. *and* 105 S.Ct. 200 (1984).

## III. CONCLUSION

We find that the district court erred in admitting evidence that Hodges had, subsequent to the conspiracy, attempted to extort money from one of his co-conspirators. The highly prejudicial nature of the evidence requires that Hodges' conviction be reversed and that the case be remanded for a new trial.

### REVERSED AND REMANDED

WALLACE, Circuit Judge, concurring:

I concur in the result reached by the majority, and concur entirely with all except part II.B. I believe that we need not reach the issue of whether the reference to Hodges' offer of a favorable story in exchange for money is unfairly prejudicial relative to its probative value. I agree that the threat of physical violence is unfairly prejudicial, and its presence in the record sufficiently harmful to warrant reversal. Since this alone requires reversal, however, the majority's analysis of the rest of Hodges' statement is dictum, and constitutes an unnecessary intrusion into the domain of the district court. We should leave the issue of whether that statement's probative value outweighs any prejudice to the district court in the first instance. If the issue comes before us again, our review will be based upon an adequate record under the abuse of discretion standard.

Since the central issue in this case is Hodges' knowledge or consciousness of guilt, the need to commit this evidence to the sound discretion of the district court is even more compelling. The majority concedes that the evidence has some probative value with respect to Hodges' knowledge. Under these circumstances, I believe that we should not undertake a rule 403 balancing on appeal, but should leave that issue open for the district court in the new trial.