967 F.2d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernesto Manuel FONSECA-CARO, Defendant-Appellant.
 No. 91-10261.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 1992.
Decided July 2, 1992.
 
 Before CHOY, HUG and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Ernesto Manuel Fonseca-Caro was indicted and convicted of one count of conspiracy to possess with intent to distribute 200 pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b(1)(C), and 846 and one count of using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). He appeals his conviction and resulting sentence. We affirm his conviction, vacate his sentence, and remand to the district court for resentencing.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 The Drug Enforcement Agency (DEA) began to investigate Fonseca-Caro in May 1989 when Lorraine Alvarez, Fonseca-Caro's estranged wife, contacted DEA agents and told them that he was engaged in marijuana trafficking. She agreed to assist agents in the investigation.
 
 
 4
 On July 18, 1990 Alvarez told DEA agents that Juan Pedro Koons-Barbosa had informed her that he had $180,000 and wanted to buy 200 pounds of marijuana. Alvarez directed Koons-Barbosa to the DEA agents to negotiate the transaction. Koons-Barbosa told Alvarez that after the deal Fonseca-Caro would get his share because "they were Neto's people." Alvarez testified that Fonseca-Caro telephoned her the same day to tell her that "they were his people," that she could deal with Koons-Barbosa, and that he would receive his share after the deal went through.
 
 
 5
 DEA agents arrested Koons-Barbosa and James Frazier at a video store parking lot as they attempted to complete the drug deal. Frazier cooperated with the agents and telephoned codefendant Steven Wronko to ask him to deliver additional money needed to complete the sale. DEA agents watched Wronko's apartment after Frazier told them where Wronko lived and gave them his general description. Agents arrested Wronko as he was driving to meet Frazier. He had with him a carry-on Samsonite bag containing approximately $64,000.
 
 
 6
 Koons-Barbosa, cooperating with government authorities,[1] testified that he previously had engaged in drug transactions with Fonseca-Caro.[2] Specifically, he testified that he, Fonseca-Caro, Frazier, and Wronko had attempted a drug deal one or two days prior to his arrest. He also testified that Fonseca-Caro, Wronko, and he had completed a sixty-five pound marijuana transaction with a seller named Sylvia. Frazier, who also was given immunity, testified as to previous drug dealings with Fonseca-Caro and Wronko and corroborated Koons-Barbosa's testimony regarding the aborted transaction one or two days prior to his arrest. He also testified about another drug transaction involving Fonseca-Caro, Wronko, and himself earlier in the year when Fonseca-Caro was allegedly the marijuana supplier.
 
 
 7
 Frazier testified that the money involved in the attempted transaction for which he was arrested belonged to Wronko and that he was acting as Wronko's agent. Wronko testified that the carry-on bag with the money belonged to Frazier, and denied any involvement in the charged offense or in any of the previous marijuana transactions. Wronko testified that had he had neither seen or met Fonseca-Caro before the first day of the trial, nor had he been involved in any previous drug transactions with Fonseca-Caro.
 
 
 8
 In its closing argument, the government referred to items contained in two matching carry-on bags that were introduced into evidence during the trial. One bag was in Wronko's possession when he was arrested and contained a pen from the Pagosa Springs Bank. The other bag was in Frazier's possession when he was arrested at the video store and contained stationary from a Howard Johnson's motel. The government referred to these items to prove that Wronko owned the carry-on bag and to discredit his testimony. The defendants objected to the introduction of these items because they were not properly admitted and their existence was not disclosed during pre-trial discovery.
 
 II. DISCUSSION
 A. Evidence of Prior Bads Acts
 1. Admission
 
 9
 Admission of evidence of prior bad acts is reviewed for an abuse of discretion. United States v. Mundi, 892 F.2d 817, 820 (9th Cir.1989), cert. denied, 111 S.Ct. 1072 (1991).
 
 
 10
 Fonseca-Caro argues that the district court improperly allowed the introduction of testimony concerning three alleged prior drug transactions in violation of Federal Rules of Evidence 404(b)[3] and 403.[4] The court admitted that the evidence was indeed prejudicial, but found that its probative value outweighed this prejudice.
 
 
 11
 We hold that the judge adequately explained the legitimate purposes for which the evidence was admissible. The judge explained to which elements he thought the evidence was relevant and that he felt that its probative value outweighed the danger of prejudice. See United States v. Anderson, 933 F.2d 1261, 1269 (5th Cir.1991) (no remand where probative value/prejudice evaluation is readily apparent from the record, and there is no substantial uncertainty about the ruling).
 
 
 12
 The evidence is specifically relevant to show intent and plan, an element of conspiracy to possess with the intent to distribute marijuana. United States v. McKoy, 771 F.2d 1207, 1214 (9th Cir.1985) (admission of prior bad acts relevant to show development of conspiracy); United States v. Nadler, 698 F.2d 995 (9th Cir.1983) (same).[5]
 
 
 13
 The district court did not abuse its discretion under Rule 403 in determining that the probative value of the evidence outweighed its prejudicial effect. Any confusion caused by the admission of the evidence was tempered by the court's limiting instructions. Moreover, merely because the prior drug transactions involved some different sellers and buyers, different circumstances, and different quantities does not mean that the evidence is entirely irrelevant to the development of the conspiracy. Fonseca-Caro's argument proves too much because his broad characterization of the differences between the prior conduct and the charged offense would exclude all prior bad acts just because they occurred on different days and involved different people.
 
 2. Limiting Instruction
 
 14
 We review jury instructions for an abuse of discretion, "considering the instructions as a whole and evaluating the adequacy of the entire charge in the context of the whole trial." United States v. Smith, 891 F.2d 703, 708 (9th Cir.1989), as amended, 906 F.2d 385 (9th Cir.), cert. denied, 111 S.Ct. 47 (1990).
 
 
 15
 Fonseca-Caro argues that the district court did not give proper limiting instructions when it allowed the introduction of evidence of prior bad acts. A review of the record demonstrates, however, that the limiting instructions, when viewed in their entirety, properly informed the jury of the purposes for which it could consider the prior-bad-acts evidence. Only the first instruction used the objectionable "until" language that suggested that the jury should find the defendant guilty; the remaining instructions stated that the jury could not consider the evidence "unless" it found that Fonseca-Caro had committed the crime for which he was charged. Moreover, the instructions repeatedly admonished the jury that it could only consider the evidence for the limited purposes of motive, intent, and plan.[6] In these circumstances, the instructions did not confuse the jury or encourage them to use the evidence of prior bad acts for a prohibited purpose. United States v. Aims Back, 588 F.2d 1283, 1287 (9th Cir.1979), cited by Fonseca-Caro, is distinguishable. The evidence in that case had almost no probative value and was highly prejudicial. In contrast, the evidence in this case is probative of Fonseca-Caro's participation in a plan or conspiracy to distribute marijuana. Moreover, the district court's limiting instruction in Aims Back, a rape prosecution, stated that the evidence could be considered for "what value it may have in just establishing the whole pattern of the evening." Id. at 1286. Thus, the instruction in Aims Back did not specify the legitimate purposes for which the jury could use the evidence, a problem that does not exist here.
 
 B. New Evidence During Closing Argument
 
 16
 Fonseca-Caro argues that the items found in the carry-on bag were improperly admitted because the prosecutor first referred to them during closing argument and their admissibility was never previously developed.
 
 
 17
 The items were admitted with Exhibits One and Four which Fonseca-Caro does not argue were otherwise improperly admitted into evidence. The court admonished the parties to inspect the exhibits when they were entered into evidence at trial. During the post-trial motion for a new trial, the district court found that the items were "technically in evidence." Such a finding was not an abuse of discretion. United States v. Rohrer, 708 F.2d 429, 432-33 (9th Cir.1983).
 
 
 18
 Fonseca-Caro also argues that the government's failure to disclose the existence of the items tended to destroy the credibility of Wronko, portions of whose testimony were favorable to Fonseca-Caro.
 
 
 19
 Assuming arguendo that the government's nondisclosure was error, we find that such error was harmless. Nondisclosure of evidence is reversible error only if the evidence is "material in the sense that its suppression undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667 (1985); see also Giglio v. United States, 405 U.S. 150, 154 (1972).[7]
 
 
 20
 The nondisclosure was harmless as applied to Fonseca-Caro because the government introduced sufficient evidence to convict him regardless of Wronko's credibility. Alvarez and DEA agents testified that they attempted to set up drug transactions with Fonseca-Caro several times. Koon-Barbosa's and Frazier's testimony also tended to prove that Fonseca-Caro was engaged in a conspiracy to distribute marijuana and that he had the requisite intent.
 
 
 21
 It is unclear what steps Fonseca-Caro would have taken if the existence of the items had been disclosed earlier, or what evidence he would have offered to rebut the government's use of the items. On this appeal he claims that he may have taken the stand had he known that Wronko's credibility would be so thoroughly assailed. There were other attacks on Wronko's credibility, however, that did not prompt Fonseca-Caro to take the stand. These attacks were no less damaging to Wronko's credibility as they related to his testimony that he had never met or dealt drugs with Fonseca-Caro. If Fonseca-Caro was going to testify because Wronko's credibility was attacked, he would have done so regardless of the admission of the items in the carry-on bag.
 
 
 22
 C. Admission of Allegedly Confidential Spousal Communications
 
 
 23
 Fonseca-Caro argues that the district court improperly admitted portions of Alvarez's testimony that contained privileged marital communications. The district court denied Fonseca-Caro's motion to suppress the testimony, deciding that he was not entitled to the marital communications privilege. We review this determination for an abuse of discretion. United States v. Marashi, 913 F.2d 724, 731 (9th Cir.1990).
 
 
 24
 We affirm the admission of the communications because, as statements in furtherance of joint criminal activity, they fall within the well-recognized exception to the marital communications privilege. Id. at 730. The communications concerned marijuana transactions in which both Fonseca-Caro and Alvarez were involved.[8] Moreover, the fact that Alvarez was not prosecuted is irrelevant. See id. at 731. Thus, the communications were not privileged, and the district court properly admitted Alvarez's testimony.
 
 D. Sentencing Issues
 
 25
 Fonseca-Caro argues that the district court erred in departing upward because it did not identify "an aggravating ... circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." United States v. Michel, 876 F.2d 784, 786 (9th Cir.1989). The district court did not make any specific findings that such an aggravating circumstance existed in this case. Because the district court is required to state its reasons for departing upward and the degree of the departure, United States v. Montenegro-Rojo, 908 F.2d 425, 431 (9th Cir.1990), Fonseca-Caro's sentence must be remanded.[9]
 
 
 26
 To guide the district court on remand, we address some of the other claims raised on this appeal. First, the district court's analogy to the career-offender provisions of the Sentencing Guidelines was an unlawful basis for departing upward or otherwise adjusting his sentence where he was not arrested, charged, or convicted of the other alleged offenses. United States v. Faulkner, 952 F.2d 1066, 1072-73 (9th Cir.1991). The district court's statements at the sentencing hearing concerning the career-offender provisions demonstrate that its departure was based on the career-offender provisions. Faulkner held that in applying the ordinary criminal history provisions, an analogy to the career-offender provisions is inappropriate. Id. at 1072; see United States v. Schubert, 957 F.2d 694, 696 (9th Cir.1992).
 
 
 27
 Fonseca-Caro also argues that the upward departure was unreasonable because the sentence effectively gave him a Criminal History Category V instead of his undisputed Category II.[10] The district court should examine the next higher criminal history category and determine if using that category is appropriate before considering a higher departure. See § 4A1.3 (policy statement) (court should "use, as a reference, the guideline range for a defendant with a higher ... criminal history category"). Any further departure is justified only if the defendant's criminal history "is so egregious that further departure is warranted." United States v. Richison, 901 F.2d 778, 781 (9th Cir.1990); see also United States v. Collins, 915 F.2d 618, 621 (11th Cir.1990) ("[i]n justifying a particular criminal history category, a sentencing court should state that the defendant fits in the category selected and that no intervening category would be appropriate"). On remand, the district court should address whether Fonseca-Caro's criminal history was "so egregious" as to warrant an upward departure.
 
 
 28
 Finally, the district court increased the offense level by four points because Fonseca-Caro was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1. Fonseca-Caro argues that the court cannot look at criminal conduct outside that involved in the offense of conviction in determining whether he was an organizer because his criminal conduct occurred before the November 1990 amendment to the Introductory Commentary to Chapter Three, Part B, which made § 1B1.3 applicable to § 3B1.1. Before the amendment most courts had held that determination of the defendant's role in criminal activity was limited to the offense of conviction and could not include uncharged conduct. See United States v. Furlow, 952 F.2d 171, 172 (8th Cir.1991); United States v. De La Rosa, 922 F.2d 675, 680 (11th Cir.1991); United States v. Streeter, 907 F.2d 781, 792 n. 4 (8th Cir.1990); United States v. Pettit, 903 F.2d 1336, 1341 (10th Cir.), cert. denied, 111 S.Ct. 197 (1990); United States v. Tetzlaff, 896 F.2d 1071, 1074 (7th Cir.1990); United States v. Williams, 891 F.2d 921, 926 (D.C.Cir.1989); cf. United States v. Zweber, 913 F.2d 705, 709 (9th Cir.1990) (reaching same conclusion interpreting § 3B1.2).
 
 
 29
 Without referring to the uncharged drug transactions, it is unclear whether a preponderance of evidence supports the district court's conclusion that Fonseca-Caro was an organizer or leader. On remand the district court should make a new finding on this issue.
 
 
 30
 AFFIRMED in part, VACATED in part, and REMANDED for resentencing.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 He entered into a plea agreement with a binding sentencing cap of 48 months with a government recommendation for a term of 36 months in exchange for his testimony
 
 
 [2]
 Fonseca-Caro and Wronko objected in limine to the admission of the testimony concerning the prior alleged drug transactions; they renewed their objections during the trial
 The court denied these objections, stating that although the testimony was prejudicial, its probative value outweighed this prejudice. The court gave several limiting instructions during the course of the trial and a final instruction when it charged the jury. The defendants neither objected to these instructions, nor did they offer their own instruction.
 
 
 [3]
 Rule 404(b) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [4]
 Rule 403 states:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 [5]
 United States v. Powell, 587 F.2d 443, 448 (9th Cir.1978) is not on point because intent was not a material issue there. Moreover, unlike the present case, in Powell, the prior bad acts were not relevant to prove a conspiracy or plan. Id. at 448
 
 
 [6]
 Fonseca-Caro characterizes the instructions as open-ended and confusing, but taking the instructions as a whole, they were not "misleading or represent[ ] a statement inadequate to guide the jury's deliberations." United States v. Elksnis, 528 F.2d 236, 238 (9th Cir.1975) (citations omitted)
 
 
 [7]
 Fonseca-Caro argues that United States v. Butler, 567 F.2d 885, 890 (9th Cir.1978) controls, but Butler stated the rule before Bagley, which clarified confusion over the proper interpretation of Brady v. Maryland, 373 U.S. 83 (1963). Before Bagley, circuits applied different standards for nondisclosure depending on the nature of the defendant's request for information, the prosecutor's culpability in failing to disclose the information, and the type of evidence involved
 Fonseca-Caro also argues that the automatic reversal rule of Davis v. Alaska, 415 U.S. 308 (1974) applies in this case. Davis, unlike this case, was a situation where the defendant's right of cross-examination was restricted by the government's actions.
 The Supreme Court has reserved the automatic reversal rule for special circumstances. See Arizona v. Fulminante, 111 S.Ct. 1246 (1991) (rule of automatic reversal reserved for "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards"). The failure to disclose the items is not a structural defect such as the failure to provide counsel, Gideon v. Wainwright, 372 U.S. 335 (1963), or the failure to secure an impartial judge, Turney v. Ohio, 273 U.S. 510 (1927).
 
 
 [8]
 The April 22, 1990, April 24, 1990, April 25, 1990, and July 18, 1990 communications involved transactions that Fonseca-Caro was organizing with the assistance of Alvarez. The April 19, 1990 conversation regarding Fonseca-Caro's trip to Nogales is less clear. Considering that the trip was part of an ongoing conspiracy to distribute marijuana, that it was close in time to the other communications involving transactions clearly involving Alvarez, and that Fonseca-Caro found it necessary to contact Alvarez suggests that this communication involved criminal activity that involved both spouses as well
 
 
 [9]
 Both Fonseca-Caro and Wronko argue that the district court failed to provide any written findings on their objections to the PSRs. The district court should append these written findings on remand as required by Rule 32(c)(3)(D). United States v. Fernandez-Angulo, 897 F.2d 1514, 1517 (9th Cir.1990) (en banc); Schubert, 957 F.2d at 695
 
 
 [10]
 According to the Sentencing Table, Criminal History Category II, Offense Level 30 has a range of 108-135 months, while 180 months, the sentence Fonseca-Caro received, falls under Criminal History Category V for a defendant with an Offense Level 30. See U.S.S.G., Ch. 5, Pt. A, Sentencing Table