16 F.3d 1229
NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
 UNITED STATES of America, Appellee,
v.
Arkel Samual SAULSBURY, Appellant.
United States of America, Appellee,
v.
Alan J. Jordan, Appellant.
 Nos. 93-1042, 92-3934.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: September 16, 1993.
Filed: January 19, 1994.
 
 Before McMILLIAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Arkel Samual Saulsbury appeals his conviction and sentence, and Alan J. Jordan appeals his sentence. We affirm.
 
 
 2
 In May 1992, the grand jury charged Saulsbury and Jordan with knowingly and intentionally possessing with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. Secs. 841(a)(1), (b)(1)(A)(iii), and 18 U.S.C. Sec. 2 (Count I). The grand jury also charged Saulsbury and Jordan with conspiracy to distribute 500 grams or more of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. Secs. 841(a)(1), (b)(1)(B)(ii), and 846 (Count II).
 
 JORDAN
 
 3
 Jordan pleaded guilty to two counts of conspiracy to distribute and to possess a controlled substance. Prior to sentencing, Jordan's appointed counsel moved for appointment of an expert witness at government expense. Counsel argued that the district court should appoint Dr. Thomas Sannito (a psychologist) to evaluate Jordan because counsel believed that Saulsbury's ability to unduly influence Jordan would justify a downward departure from the Guidelines. The court denied the motion.
 
 
 4
 Jordan's offense level of 33 combined with a criminal history category of II to produce a Guidelines range of 151-188 months. The government moved to depart downward for substantial assistance under U.S.S.G. Sec. 5K1.1, p.s., but refused to make a motion under 18 U.S.C. Sec. 3553(e) to depart from the statutory mandatory minimum sentence of ten years. Jordan, however, argued that a departure under 18 U.S.C. Sec. 3553(b), based on circumstances not adequately taken into consideration by the Sentencing Commission, was warranted because he was unusually susceptible to being influenced by Saulsbury.
 
 
 5
 The court granted the government's motion, but denied Jordan's motion, concluding that it would not depart under U.S.S.G. Sec. 5K2.0, p.s. (the policy statement for section 3553(b)). The court also stated that it would not have departed below the statutory minimum even if it had the authority, because the circumstances of the case compelled a ten-year sentence. Accordingly, the court sentenced Jordan to the statutory minimum 120 months imprisonment, to be followed by a five-year term of supervised release.
 
 
 6
 Jordan now argues that the district court applied the wrong standard when deciding whether to appoint a psychological expert; that the expert's testimony would have been admissible during the sentencing hearing to assist the court in deciding whether to depart under section 5K2.0; and that Jordan's susceptibility to Saulsbury's influence was not the type of circumstance the Commission had taken into consideration when it formulated the Guidelines. Jordan also argues that the court had discretion to depart under section 5K2.0 after granting the government's motion to depart below the Guidelines range, because the statutory minimum sentence then became the Guidelines sentence under U.S.S.G. Sec. 5G1.1(b).
 
 
 7
 Decisions regarding the grant or denial of expert services are "committed to the sound discretion of the district court; the denial or limitation of funds for expert services will not be reversed absent a showing of prejudice." United States v. Bercier, 848 F.2d 917, 919 (8th Cir. 1988). We conclude that Jordan's arguments are meritless because, even if the court had granted Jordan's motion for appointment of an expert witness, the court could not have departed below the statutory minimum sentence absent the government's motion under section 3553(e). See United States v. Johnson, 988 F.2d 859, 860 (8th Cir. 1993) (per curiam) (district court does not have authority to depart downward from statutory minimum sentence absent section 3553(e) motion by government even if applicable Guidelines Sentencing range is below that of statutory minimum). In addition, the issue was foreclosed by the district court's statement that it would not depart below the statutory minimum sentence even if it had the authority to do so, because it believed that the circumstances of the case compelled a ten-year sentence. As a result, Jordan was not prejudiced by the district court's refusal to appoint Sannito.
 
 SAULSBURY
 
 8
 Saulsbury did not plead guilty, but exercised his constitutional right to a jury trial. Officer Richard Knief testified that as officers entered Jordan's house, pursuant to a search warrant, they found Jordan's girlfriend and her two children in the living room, Jordan and Saulsbury in the kitchen, and a large amount of money on the kitchen counter. Knief identified 102 grams of crack, an electronic scale, a box of baking soda, and plastic sandwich bags officers seized from the kitchen.
 
 
 9
 Jordan testified-over hearsay, irrelevancy, and immateriality objections-that Saulsbury told him he made money by selling drugs in Iowa. He also stated that Saulsbury told him in June 1991 that Iowa was a good place to live and that he should move there from California. In July 1991, six weeks after moving to Iowa and getting a job, Jordan obtained two weeks leave from his employer to return to California to get his family, but Jordan remained in California until December and lost his job in Iowa. Jordan stated that Saulsbury appeared in California while he was there and offered him $1,000 to carry a kilogram of cocaine to Iowa. Saulsbury hid the cocaine in Jordan's spare tire, and the day after Jordan arrived in Iowa, Saulsbury removed it. Jordan testified that after he and his girlfriend moved into the house they were renting, Saulsbury came over and asked if he could store drugs in the house. Jordan stated that Saulsbury brought the cocaine, a scale, and cooking equipment that day or the next. Between early January and February 4, 1992, Saulsbury "cooked" cocaine in Jordan's kitchen on three occasions, stored money there, and asked Jordan to wire money to Percy Johnson in California. Saulsbury occasionally gave Jordan money for his assistance. Jordan testified that, at the time of the search, Saulsbury was counting money on the kitchen counter, and that the money had come from selling drugs. Jordan stated that Saulsbury gave him $500 that night because "he had a good night."
 
 
 10
 Wayne Warren Trujillo testified that while he and Saulsbury shared a cell in the Blackhawk County jail, Saulsbury stated that he was surprised by Jordan's statements to the police and that he was going to take care of Jordan. Trujillo stated that he took the threats very seriously and reported them to one of the officers at the jail. Trujillo also testified Saulsbury said that he had a beat-up car and a cheap apartment, and that there was no way when comparing his lifestyle to Jordan's that officials could believe he was making a lot of money or was running this operation. Trujillo testified, "He did say that his new story would be that he was just working, to make a small income, for Jordan."
 
 
 11
 The jury found Saulsbury guilty on both counts. At sentencing, DEA agent Richard J. LaMere, Jr., testified that an amount of cocaine powder should be multiplied by .89 and its purity-percentage to determine the amount of cocaine base it would yield. He also testified that cocaine imported from California is usually of high purity, around ninety percent. Saulsbury testified that after reading a state report that Jordan had implicated him, he became very angry. He admitted that he made threats concerning Jordan in Trujillo's presence, but he stated that he did not intend to carry them out. Saulsbury noted that he continued to do favors for Jordan and that he did not harm Jordan when he had the opportunity.
 
 
 12
 Overruling Saulsbury's objection to the presentence report's drug-quantity calculation, the court determined that a total of 900 grams of crack cocaine[1] was attributable to Saulsbury, that the base offense level was 36, and that Saulsbury should receive a two-level obstruction-of-justice enhancement for threatening Jordan's welfare. The court thus calculated a Guideline range of 235-293 months based on a criminal history category of I and an offense level of 38. The court sentenced Saulsbury to two concurrent 240-month terms of imprisonment and five years supervised release.
 
 
 13
 Saulsbury now argues that Jordan's testimony concerning Saulsbury's drug activities prior to June 1991 was irrelevant, immaterial, and hearsay. Saulsbury also argues that the district court erred by imposing the obstruction-of-justice increase, because he made the threat against Jordan impulsively after reading Jordan's statement, he lacked the requisite mens rea to carry out the threat, and at the time there was no pending federal investigation or charge. Finally, Saulsbury argues that the district court erred by attributing to him the additional 800 grams of crack because there was no evidence (aside from Jordan's testimony) linking him to the alleged kilogram of cocaine powder. Alternatively, Saulsbury argues that the district court erred by using LaMere's formula rather than the Guideline Drug Equivalency Tables for converting from cocaine powder to crack.
 
 
 14
 We have definite concerns about the admissibility of Jordan's testimony regarding Saulsbury's statements that he was selling drugs in Iowa. We are also unconvinced by the government's argument that Jordan's testimony was not offered as Federal Rule of Evidence 404(b) evidence. See United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985), cert. denied, 474 U.S. 1081 (1986) (government must articulate basis for admission of evidence and trial court must identify purpose for which evidence is offered); United States v. Hodges, 770 F.2d 1475, 1480 n. 4 (9th Cir. 1985) (uncharged crime or act must be close in time to crime charged); see also McCormick on Evidence, Sec. 190 at 811 (John W. Strong et al. eds., 1992). We conclude, however, that any error was harmless given the substantial evidence of Saulsbury's guilt, see United States v. Weddell, 890 F.2d 106, 108 (8th Cir. 1989), and we thus affirm.
 
 
 15
 We further conclude the district court did not err in giving the obstruction-of-justice enhancement. While the application of the Guidelines to specific conduct is reviewed de novo, see United States v. Dortch, 923 F.2d 629, 631 (8th Cir. 1991), "[a] district court's findings of fact in support of a section 3C1.1 enhancement are reviewed on the clearly erroneous standard." United States v. Adipietro, 983 F.2d 1468, 1479 (8th Cir. 1993) (cited cases omitted). The district court found that Saulsbury threatened to harm Jordan and that the threat was communicated to him. Trujillo testified at trial that Saulsbury called his girlfriend and asked her to tell Jordan not to testify against him. Saulsbury did not refute this evidence. Section 3C1.1 applies to any conduct "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. Sec. 3C1.1 n. 3(a). As a result, Saulsbury's argument that his conduct did not amount to obstruction of justice is meritless. Equally meritless is Saulsbury's argument that threats made prior to the initiation of a federal investigation, but during incarceration on state charges for the "instant offense," should not be considered under section 3C1.1. Cf. United States v. Ball, 999 F.2d 339, 340 (8th Cir. 1993) (per curiam) (attempt to escape from state custody also obstructs federal investigation).
 
 
 16
 Finally, we conclude that the district court did not err by attributing 900 grams of crack to Saulsbury. We find that there was sufficient evidence linking Saulsbury to the kilogram of cocaine powder. The evidence at trial proved that Saulsbury converted the cocaine powder to crack; there is no evidence that Saulsbury ever distributed cocaine powder. Hence, under the Guidelines, the district court had to approximate the total quantity of crack that could be manufactured from the cocaine. See U.S.S.G. Sec. 2D1.1, comment. (n.12) ("Where ... the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance."); see also United States v. Paz, 927 F.2d 176, 180 (4th Cir. 1991). As a result, the district court did not err by relying on LaMere's testimony to determine the conversion factor and arrive at an approximate drug quantity. Any error with respect to whether the 100 grams of crack seized during the arrest were derived from the kilogram of cocaine powder that the court also attributed to Saulsbury was harmless, because the same sentencing range would have applied to both 800 grams and 900 grams of crack.
 
 
 17
 Accordingly, we affirm Jordan's sentence, and affirm Saulsbury's conviction and sentence.
 
 
 
 [1]
 That total consisted of the approximate 100 grams seized, plus 800 grams as converted under La Mere's formula (i.e., 1000 X .89 X .90) from the kilogram of cocaine powder Jordan testified he brought from California for Saulsbury