**Michael Eugene COLLEY,
Petitioner-Appellant,**

v.

**George SUMNER, et al.,
Respondents-Appellees.**

No. 85–1588.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 12, 1985.

Decided March 12, 1986.

---

N. Patrick Flanagan, III, Asst. Federal Public Defender, Reno, Nev., for petitioner-appellant.

David F. Sarnowski, Carson City, Nev., for respondents-appellees.

Before SNEED, KENNEDY and BOOC-HEVER, Circuit Judges.

SNEED, Circuit Judge:

This is an appeal from the district court's denial of Michael Colley's petition for a writ of habeas corpus. Colley is presently incarcerated in the Nevada State Prison, where he is serving a twenty-year term of imprisonment and a consecutive life term with the possibility of parole. The district court entered a final judgment on December 24, 1984, and this court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I.

## BACKGROUND

We are not the first court to confront events of the night of March 25, 1979, in which appellant was involved. On that night, Kristine Jensen was admitted to the emergency room at Carson-Tahoe Hospital. She suffered from multiple stab wounds that had caused a loss of one-third of her total blood volume and required prompt surgery to prevent death. When one of the nurses asked Jensen if she knew who her assailant had been, she identified as her attacker the man who had brought her to the emergency room—Michael Colley, the appellant.

He was prosecuted and his first trial ended in a mistrial. In November 1979, Colley was retried in Nevada state court for the crimes of attempted murder and battery with intent to commit sexual assault resulting in substantial bodily harm. At trial, Jensen's version of the events that occurred on the evening of March 25, 1979, was as follows.

Colley, a casual acquaintance of Jensen, stopped at her home early in the evening and invited her to go out driving with him. Because she wanted to practice on a manual shift car, she agreed. After stopping the car briefly so that Ms. Jensen could talk to two friends she had spotted on the street, Colley drove out of town a couple of miles on a dirt road. Suddenly, he turned the car off the path, grabbed Ms. Jensen's neck and began choking her, and said, "I'm going to kill you." After a struggle, Jen-

sen fell out of the car. Colley got out, and came around to where she lay. He put his hand on her neck and said, "Don't scream or I won't do nothing [sic]."

After Jensen agreed not to make noise, Colley began apologizing, saying he didn't know what he was doing. She steadily moved away from him, but he came after her. In the ensuing struggle he threw her to the ground; she tried to get up, but he started choking her again. He said, "You are so pretty." When she had a chance, she ran into the bushes. He chased her, pushed her into the dirt, and repeatedly kicked her. She threw sand in his face, after which he retreated to his car. He returned with a knife and began stabbing her and taking off her clothes. After leaving again for a few minutes, Colley came back and said, "We have got to get you to a hospital." He asked her, "Who did this?" and in order not to enrage him she said, "Steve Walker." *See* Reporter's Trial Transcript on Appeal at 194–221 [hereinafter cited as R.T.] (testimony of Christine Jensen).

Hospital personnel took up the story at that point and testified that Ms. Jensen and Colley arrived at Carson-Tahoe Hospital sometime between 9:30 and 10:00 that evening. Apparently, Colley first came in alone and said, "I have someone out in the car with multiple stab wounds." He had blood under his fingernails, dirt around his eyes, and twigs or pieces of tumbleweed in his hair and sweater; his face had been scratched. When the hospital personnel brought Jensen in from the car, she was naked from the waist down. While in the waiting room, Colley acted in a violent manner: he punched the doors, threw off the clerk's hand when she grabbed his arm, and kicked over a standing ashtray. *See id.* at 307–15 (testimony of Theresa Laird).

After Ms. Jensen's relatives—not the police—located the scene of the crime on March 26, the police searched at the site and uncovered the victim's clothing, some blood stains, and a large pocket knife.

Colley's version of the events of March 25, 1979, contradicted Ms. Jensen's. In his

testimony he recounted an evening spent with friends, including his fiancee, Debra Pena. He testified that on his way home from visiting with his friends, he saw a woman staggering along the road (at a place two miles from where the crime occurred). He noticed that she was hurt and he pulled over. Recognizing her as he approached, he laid his hand on her shoulder and began to speak. She screamed and attacked him, scratching him and pulling his hair. He stopped her and told her he was going to take her to the hospital. She resisted at first, but finally agreed. *See id.* at 572–79 (testimony of Michael Colley). On the way to the hospital, he asked her who her assailant had been. She replied, "Steve." *Id.* at 579.

On cross-examination, the prosecution attacked Colley's testimony regarding his whereabouts at the time of the attack on Ms. Jensen. As required by state statute, Nev.Rev.Stat. § 174.087, the defense had earlier filed a pre-trial Notice of Alibi, naming Colley's friends who allegedly had seen him on March 17, 1979, and March 25, 1979. Although the list included his fiancee, Debra Pena, neither the prosecution nor the defense called her to the stand at trial. Nonetheless, Colley mentioned her in connection with his alibi, and during cross-examination the prosecutor asked, "Where is she now?" *See* R.T. at 584. After Colley replied that she was in Chicago, defense counsel objected to this line of inquiry on grounds of irrelevance. When asked by the court to establish the relevance of the questioning, the prosecution replied, "I believe Debra Pena was originally named as one of the alibi witnesses." *Id.* at 585.

At this point defense counsel objected and, after the jury was excused, a motion for mistrial was made. *See id.* at 585–86. Defense counsel argued that a Notice of Alibi cannot be used by the prosecution in this manner. He contended that the state had, in effect, shifted the burden of proof of innocence to the defendant by requiring him to explain why Ms. Pena had not been called to the stand. *See id.* at 586–90. The court disagreed and denied the motion for a mistrial. In its view, the introduction of

direct testimony concerning Ms. Pena by the defense had rendered her availability as a witness a legitimate topic of inquiry on cross-examination; nor did the court find prejudicial the prosecution's reference to Pena as a potential alibi witness.

The State in rebuttal called Evelena Hohl to the witness stand. Over the defense's objections, she testified that Colley had sexually assaulted her just eight days before his alleged attack on Jensen and at almost the same location. Hohl's testimony described a *modus operandi* similar in other respects to the one alleged by Jensen. According to Hohl, she saw Colley in a parking lot and asked him for a ride home, to which he assented. When she got home, she filled up an empty beer bottle with whiskey and then asked Colley to take her back to where he had picked her up. He again agreed, but said he needed to stop by his brother's house first. He drove out of the city for several miles, stopped the car, and turned off the lights. Grabbing Hohl by the hair, he told her to take her clothes off; upon her refusal, he walked around to her side of the car and began to choke her. When she saw that she could neither prevail in a struggle nor dissuade him by pretending unconsciousness, she ceased struggling and allowed him to rape her. On the way home afterward, he kept saying, "Why did I do this? How come you didn't stop me?" He declared his intention to commit suicide and showed Hohl the knife he claimed he was going to use to take his life. *See id.* at 627–32 (testimony of Evelena Hohl).

Prior to trial, the defense filed a motion *in limine* to exclude evidence of other crimes committed by Colley. Defense counsel argued that Hohl's testimony was not necessary to prove intent if the jury believed Colley committed the alleged acts against Ms. Jensen. The prosecution responded by pointing out that intent was placed in issue by Colley's plea of not guilty and that the alleged prior acts were probative of identity due to their similarity in time and manner. Agreeing with the

prosecution, the court denied the motion to exclude.

Also before trial, the defense filed a motion to compel both Jensen and Hohl to undergo psychiatric examinations establishing their competency to testify. Defense counsel argued that peculiar circumstances—a history of psychological problems in Hohl's case and, evidently, the traumatic nature of the attack in Jensen's—cast doubt on the reliability of their testimony. *See* Transcript of Proceedings at Arraignment at 23–26. The court denied the motion. It concluded that Nevada law did not compel such examinations, and it stated that it would not order them absent substantial evidence of their necessity.

Following presentation of the evidence and counsel's closing arguments, the jury was directed to determine in a unitary proceeding both Colley's innocence or guilt under the attempted murder and aggravated battery charges *and* the sentence to be meted out if it found Colley guilty of the aggravated battery charge. Under Nevada law, the jury, after such a finding, must mete out either life imprisonment with a chance of parole or life imprisonment with no chance of parole. After a substantial period of deliberation, the jury returned a guilty verdict on both charges and sentenced Colley to life imprisonment with a chance of parole on the battery charge. The trial judge sentenced Colley to a consecutive twenty-year term on the attempted murder count.

Colley appealed his conviction to the Nevada Supreme Court. There he presented the same issues that he raises here and his convictions were affirmed. Each of his contentions was rejected. The supreme court held that the prosecutor's reference to Ms. Pena's status as a potential alibi witness was not unjustified because Colley himself had injected Pena into his testimony when recounting his alibi on direct examination, and because it was "far more appropriate that she be called by the defense in corroboration than by the state." *Colley v. State*, 98 Nev. 14, 16, 639 P.2d 530, 532 (1982).

The court also ruled that the motion for a psychiatric examination of the victim was properly denied because "[h]er testimony was amply corroborated, and her emotional state was not subject to serious attack." *Id.* at 17, 639 P.2d at 532. The court further held that although Hohl's testimony at the preliminary hearing "warranted speculation by the defense that she was emotionally unstable," the trial judge had not abused his discretion in refusing to order an examination. The court observed that the defense had been able to elicit damaging testimony from Hohl regarding her drug use and past emotional problems, and that the jury had therefore had ample opportunity to assess her credibility. *Id.*, 639 P.2d at 532.

In addition, the court held that Hohl's testimony about the prior sexual assault was admissible for purposes of proving intent and identity, *id.*, 639 P.2d at 533; that Colley was not subjected to double punishment because the crimes of which he was convicted required proof of different facts and because the evidence supported a conclusion that Colley's motive had changed during the course of the crime, *id.* at 17–18, 639 P.2d at 533; and, finally, that the unitary procedure for assessing guilt and determining sentencing did not deprive Colley of effective assistance of counsel, because the defense's closing argument was predicated wholly on a theory of Colley's innocence, yet the jury—notwithstanding the defense's failure to argue for mitigation of sentence—imposed the least severe of the possible punishments for aggravated battery, *id.* at 18, 639 P.2d at 533.

In denying Colley's habeas petition, the federal district court essentially agreed with the rulings of the Nevada Supreme Court. We shall address in order the issues pertaining to double jeopardy, admission of evidence of prior bad acts, the demand for psychiatric examinations, the unitary procedure for determining guilt and punishment, and the prosecutor's comments regarding the absence of an alibi witness.

## II.

## DISCUSSION

### A. *Double Jeopardy.*

The appellant contends that because both the charge of attempted murder and the charge of battery with intent to commit sexual assault causing substantial bodily harm arose from the same transaction, his prosecution and punishment for both crimes constituted double jeopardy. Appellant raises two separate arguments. First, he claims that because the intentional infliction of substantial bodily harm is one evidentiary basis for inferring an intent to kill, every aggravated battery charge will subject the perpetrator to a charge of attempted murder. In essence, he asserts that attempted murder is a lesser included offense within the greater offense of battery with intent to commit sexual assault causing substantial bodily harm. *See* Opening Brief of Appellant at 16–18.

We disagree. As the Supreme Court held in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a single act or transaction may form the basis for the prosecution of two distinct statutory offenses whenever conviction for each offense requires the proof of a fact that the other does not. *See id.* at 304, 52 S.Ct. at 182. Moreover, the *Blockburger* test may be satisfied despite " 'a substantial overlap in the proof offered to establish the crimes.' " *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975)). The prosecution of Colley did not offend *Blockburger.* Under Nevada law, conviction of attempted murder requires, among other things, proof of an intent to kill, *see* Nev.Rev.Stat. §§ 200.010–.020, whereas conviction of battery with intent to commit sexual assault causing substantial bodily harm requires proof of intent to commit sexual assault, *see id.* § 200.400. Although Colley is correct in observing that intentional infliction of substantial bodily harm is a basis for inferring an intent to kill, an intent to kill is not a necessary element of the aggravated battery offense. It is not a fact that need be proved to secure a conviction for aggravated battery. The two offenses are distinct for double jeopardy purposes.

Colley's second argument is that the jury could not reasonably have inferred two separate intents (that is, intent to kill and intent to commit sexual assault) from the same act of stabbing. He further contends that, although both the information and the instructions to the jury specified that the attempted murder charge as well as the aggravated battery charge arose out of the stabbing, the Nevada Supreme Court affirmed the conviction on the mistaken notion that the attempted murder charge stemmed from Colley's declaration of intent to kill and subsequent choking of the victim. *See* Reply Brief of Appellant at 1–2; *Colley v. State*, 98 Nev. 14, 17–18, 639 P.2d 530, 533 (1982).

A federal court has a limited role in considering, on habeas review, the sufficiency of the evidence to support a verdict. *See Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979). The record demonstrates that a reasonable jury could have inferred from the evidence adduced at trial—particularly the evidence that Colley undressed the victim after announcing his intent to kill her—that in stabbing her he intended both to subdue her for purposes of sexual assault *and* to kill her. Because such an inference would support Colley's conviction for two separate crimes, the Nevada Supreme Court's error was not prejudicial and does not constitute grounds for granting Colley's writ of habeas corpus. As the Supreme Court stated in *Jackson v. Virginia*, "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* We therefore hold that Colley was not subjected to double jeopardy.

## B. *Admission of Evidence of Prior Bad Acts.*

■ Colley contends that Evelena Hohl's testimony alleging his commission of a prior sexual assault was irrelevant and highly prejudicial and that its admission warrants habeas relief. It is clear, however, that no such relief can be granted unless admission of the testimony was arbitrary or fundamentally unfair. *See Batchelor v. Cupp,* 693 F.2d 859, 865 (9th Cir.1982), *cert. denied,* 463 U.S. 1212, 103 S.Ct. 3547, 77 L.Ed.2d 1395 (1983).

■ As all the courts below held, the testimony was relevant to prove both intent and identity—issues that Colley raised by his "not guilty" plea. The testimony was especially probative of identity because, contrary to the defense's assertions, it did suggest that Colley possessed a unique *modus operandi.* According to the testimony, Colley took both women out driving, assaulted them in roughly the same place within several days of each other, commenced his attack by choking them, and expressed remorse, distress, and confusion during or after the act. Given these facts, Hohl's testimony must be deemed relevant evidence; its admission did not deprive Colley of a fair trial.

## C. *Psychiatric Examinations.*

■ Colley has cited no authority justifying his attempt to compel Jensen and Hohl to undergo psychiatric examinations prior to testifying. Moreover, we conclude that the trial judge did not abuse his discretion in denying the appellant's request. As the Nevada Supreme Court ruled, Jensen's testimony was amply corroborated and her emotional state was not subject to serious attack. As for Hohl, the defense cross-examined her extensively and was able to elicit damaging testimony regarding her drug use and past emotional problems, *see* R.T. at 634–44. This provided the jury with an ample opportunity to assess her credibility. In view of federal courts' "reluctance to encumber criminal proceedings with psychiatric examinations of witnesses," *United States v. Eschweiler,* 745 F.2d 435, 438 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985); *see also United States v. Brown,* 770 F.2d 768, 770 (9th Cir.1985) (holding that, on direct appeal, a trial court's denial of a motion to order psychiatric examinations of witnesses is reviewed for an abuse of discretion), we agree with the Nevada Supreme Court's conclusion that the trial court did not abuse its discretion.

## D. *Unitary Proceeding for Determining Guilt and Punishment.*

Under Nevada law, as already pointed out, the jury selects which of two penalties should be imposed for a conviction of battery with intent to commit sexual assault resulting in substantial bodily harm. *See* Nev.Rev.Stat. § 200.400(3). Appellant contends that the trial court denied him effective assistance of counsel by ordering that the jury determine in a single proceeding both the question of guilt or innocence and that of punishment. His theory is that such a procedure places a defense attorney in the untenable position of having to argue, on the one hand, for his client's acquittal and, on the other, for mitigation of the penalty *if* the jury convicts. Such arguments, he asserts, are at war with each other. To avoid two weak arguments defense counsel must forgo one or the other.

■ We reject this contention under the circumstances of this case. As the Nevada Supreme Court found and the trial transcript demonstrates, the closing defense argument "was based solely on innocence." *Colley v. State,* 98 Nev. at 18, 639 P.2d at 533; *see* R.T. at 704–15. Because the jury imposed on Colley the more lenient of the two sentencing alternatives, he cannot argue that he was prejudiced by his counsel's decision not to argue for mitigation of punishment.

## E. *Prosecutor's Reference to the Absence of an Alibi Witness.*

Colley argues finally that, by referring to the absence of Debra Pena at trial, the prosecution impermissibly shifted its bur-

den of persuasion to him and thus denied him a fair trial.

We disagree. Any constitutional error, the existence of which is doubtful, was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (articulating test for harmlessness in cases involving constitutional error). The prosecutor's reference to Pena's status as an alibi witness was brief—cut off as it was by the defense's objection—and we therefore think it highly improbable that the jury members were aware of the comment's intended significance. Moreover, any negative inferences that the comment might have encouraged could have been drawn independently by the jury. Colley was the first to mention Pena and his relationship to her, and members of the jury were likely to note her absence and speculate on its ramifications. Finally, the evidence against Colley is overwhelming.

AFFIRMED.

BOOCHEVER, Circuit Judge, dissenting:

This appeal involves a brutal and shocking crime. Nevertheless, we are charged with the duty of assuring that the defendant receives a fair trial. I dissent because I conclude that the introduction of the testimony of Evelena Hohl was so unreliable and so prejudicial as to have deprived Colley of a fair trial.

The majority's brief discussion of the issue of evidence of another alleged rape simply affirms the holdings of all the courts below, that Hohl's testimony was relevant to prove Colley's intent and identity. This court has held, however, that evidence of other crimes or wrongful acts is not looked upon with favor, and must be carefully scrutinized to determine its probative value. *United States v. Back,* 588 F.2d 1283, 1287 (9th Cir.1979). I believe that the admission of Hohl's testimony to prove Colley's intent and identity cannot withstand careful scrutiny.

Colley's defense was based on the contention that he did not attack Ms. Jensen.

He does not argue and did not testify that he attacked her but without the intent to commit rape. While intent is technically placed in issue by a plea of not guilty, the government apparently realized that Hohl's highly inflammatory testimony was too marginally relevant to introduce as part of its direct case. The testimony, however, served no permissible purpose as rebuttal. Hohl's testimony was presented after Colley's testimony. In the absence of any defense testimony indicating an attack without the requisite intent, there was nothing to rebut on that issue. In any event, any probative value underlying the admission of Hohl's testimony for the purpose of showing Colley's intent was far outweighed by the danger of unfair prejudice.

Likewise, the admission of Hohl's testimony to prove Colley's identity cannot withstand that careful scrutiny and the balancing of probative value with unfair prejudice which our prior decisions have required. There was no critical need for Hohl's testimony for purposes of identifying Colley as Jensen's assailant because there was no serious question of Colley's identification by Jensen. Colley and Jensen were casual acquaintances. Colley brought Jensen to the hospital. Jensen readily identified Colley as her attacker. This is not a case where the government is attempting to prove the identity of a masked or otherwise unidentified assailant by offering proof of the defendant's past bad acts, committed in an identical manner, as probative of the defendant's identity. The proper question in this case does not concern Jensen's identification of Colley, but whether Colley committed the assaults upon Jensen for which he was charged.

The majority finds Hohl's testimony probative of identity because it suggests Colley possessed a unique *modus operandi.* The evidence, however, does not show any unique *modis operandi.* The crime for which Colley was charged and tried, and the alleged attack upon Hohl do not constitute "signature" crimes. Colley was a casual acquaintance of Jensen's; according to

her testimony, he had asked her to go driving on the night of the attack. There is no evidence that Colley knew Hohl; she testified that she had asked him for a ride prior to her alleged attack. According to her testimony, Hohl was raped; Jensen was not, although nothing intervened to prevent her from being raped had her assailant chosen to do so. Jensen was knifed repeatedly; Hohl was not. The location of the alleged Hohl attack, though close, was not the same as that of the Jensen attack. The closeness in time between the two attacks is suspect, given that Hohl did not report her alleged attack until after reading about Jensen's attack in the paper, eight days later. The similarities between the two events were limited to the grabbing of hair, choking the victim, and expression of remorse after the attack. These cannot be said to be signature characteristics "sufficiently distinctive" from numerous other sexual assaults committed by persons other than the defendant.

"An inference of identity from prior crimes can only arise when the elements of the prior offenses and the charged offense, singly or together, are sufficiently distinctive to warrant an inference that the person who committed the prior offense also committed the offense on trial." *United States v. Powell*, 587 F.2d 443, 448 (9th Cir.1978). Thus, this circuit has allowed such evidence when the acts were strikingly similar. *United States v. Bailleaux*, 685 F.2d 1105, 1109–10 (9th Cir.1982) ("bizarre" extortion attempt in both cases based on poisoning food in store; poison used, wording of notes, payment drop-off procedure, and contact via radio station similar in each case); *United States v. Andrini*, 685 F.2d 1094, 1096–97 (9th Cir.1982) (method of starting fire by filling plastic bleach bottle with gas, puncturing, stuffing in rag, and lighting rag similar). In contrast, however, we disallowed such evidence when the characteristics of the two acts were not "distinctive, but [were] similar to numerous other crimes committed by persons other than the defendant." *Powell*, 587 F.2d at 448 (marijuana smuggling; in both cases large amounts of the drug were stored in

the smugglers' residence; insufficiently distinctive); *United States v. Webb*, 466 F.2d 1352, 1353 (9th Cir.1972) (robbery one: two men, ski masks, used pistol; robbery two: one man, different kind of mask, used pistol; insufficiently distinctive). For the reasons given above, I believe that under careful scrutiny, the evidence is marginal for the purpose of showing any unique *modus operandi*. Whatever minimally probative value Hohl's testimony had to show intent and identity was far outweighed by the danger of unfair prejudice.

"Unfair prejudice" has been defined as an undue tendency to suggest decision on an improper basis, as for example, an emotional basis. *Back*, 588 F.2d at 1285 (quoting the Notes to the Advisory Committee on the proposed Fed.Rules of Evidence).

> *Unfair* prejudice results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less probable, *e.g.*, that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.

*Bailleaux*, 685 F.2d at 1111 (emphasis in original). Of course, the use of prior bad act evidence will always be prejudicial; indeed, all evidence which tends to establish the guilt of a defendant is, in one sense, prejudicial to the defendant, but that does not mean that such evidence must be excluded. *Id.* When the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, however, such evidence, although relevant, should be excluded. *Id.* We have recognized that no matter how conscientious jurors are, they will find it difficult to compartmentalize their mental processes and consider only the probative aspects of evidence while disregarding the fact that a defendant has a bad character or a criminal record as shown by his prior bad acts. *Id.* at 1112. The jury in this case could not help but be

emotionally and adversely affected by Hohl's testimony that Colley raped her.

Such evidence becomes even more suspect and disfavored when its source is unreliable. In this case, Hohl did not come forward until after she read of Colley's arrest for Jensen's attack in the newspaper, eight days after Hohl's alleged rape. She testified that after she had driven with Colley to the location where he allegedly raped her, she had been drinking whiskey out of an "Oly" beer bottle prior to the attack, and that the bottle was left at the scene. She led police to the site by finding the only beer bottle in the area, but that bottle was found to bear a "Miller" label. Hohl, an admitted abuser of alcohol and drugs, also testified to several suicide attempts and repeated treatments by a psychologist. The state produced no corroboration of her testimony. For these reasons, I believe that she must be viewed as an unreliable witness, and her testimony typical of that which any troubled and unstable person might give. There is no suitable response to such testimony other than outright denial. At the same time, the efforts to refute the damaging testimony detract from the defense of the charged crime.

It is also of significance that the original information charged Colley with the Hohl offense as well as the Jensen offense. As far as our record indicates, he was not tried on those charges. Yet the state brought the same facts in through the back door at the Jensen trial without the necessity of proving the Hohl offense beyond a reasonable doubt. Finally, I observe that without Hohl's testimony, Colley's first trial for the Jensen offense resulted in a hung jury.

Evidence of commission of a prior offense to prove a defendant's identity and intent to commit a crime should be limited to cases where there is a real and immediate need to prove the defendant's intent and identity, where the evidence clearly establishes intent and identity, and where there can be no serious question as to the reliability of the evidence that the defendant committed the prior bad act. Compliance with this standard will ensure that probative value truly outweighs unfair prejudice. I must conclude that Hohl's testimony was so unreliable and so prejudicial that the state court's refusal to exclude her testimony was fundamentally unfair.