62 F.3d 1418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David Lee WHITIS, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 94-6333.
 United States Court of Appeals, Sixth Circuit.
 Aug. 3, 1995.
 
 Before: MILBURN and NORRIS, Circuit Judges; and GRAHAM, District Judge*
 MILBURN, Circuit Judge.
 
 
 1
 Defendant David Lee Whitis appeals his jury convictions of one count of armed carjacking resulting in serious bodily injury in violation of 18 U.S.C. Sec. 2119, one count of possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. Sec. 922(g), one count of using and carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. Sec. 924(c), and one count of making a false statement in acquiring a firearm in violation of 18 U.S.C. Sec. 922(a)(6). On appeal, the issues are (1) whether the evidence of serious bodily injury and possession of a firearm was sufficient to sustain defendant's convictions, and (2) whether the district court erred in allowing the introduction of evidence of defendant's alleged conviction of a prior crime under Federal Rule of Evidence ("Fed. R. Evid.") 404(b). For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On March 5, 1994, Linda Martin, defendant's former live-in girlfriend, was driving her car toward the Circle H Saloon in Madison County, Kentucky. Martin looked in her rear-view mirror and saw that she was being followed by a car driven by defendant. Because Martin had earlier obtained an Emergency Protective Order against defendant, she drove to the local police station and reported the situation. The local police searched for defendant but did not locate him.
 
 
 3
 Martin left the local police station and drove to the Circle H Saloon. When she arrived at the Circle H Saloon, she parked in a poorly illuminated section of the parking lot and went into the bar. She spent several hours in the Circle H Saloon talking with an old acquaintance, William Tony Fowler. Sometime near midnight, Martin and Fowler decided to leave the Circle H Saloon and drive to a local restaurant for coffee. Because Martin wanted to stop at the home of a friend, she and Fowler left the parking lot of the Circle H Saloon in their separate vehicles.
 
 
 4
 A few minutes later, as Martin was driving her 1980 Chevrolet Malibu, she felt a bump against the back of her seat, turned and saw defendant rising up from the back seat of her car with a gun in his hand. Martin recognized the gun as a .22 caliber revolver, which she had purchased for defendant as a birthday present in early February. The gun had been purchased at a pawnshop.
 
 
 5
 Defendant ordered Martin to pull over to the side of the road. A struggle ensued during which defendant struck Martin on the head with the gun, causing a significant gash. One of Martin's fingers was also injured during the struggle.
 
 
 6
 While Martin and defendant were struggling, William Fowler drove past the scene. He pulled over to the side of the road in front of Martin's car and got out of his car. At the time, Fowler did not see a gun; however, he observed a large man point directly at him and assume a stance, with both arms extended toward Fowler, as if he held a gun. Fowler was ordered to leave the scene, and Martin pleaded with him to leave because she believed defendant would shoot him. Fowler drove away from the scene, travelled several miles, and then turned around. When he returned to the scene of the struggle between Martin and defendant, her vehicle and both of its occupants were gone.
 
 
 7
 Fowler returned to the Circle H Saloon and telephoned the police. Based upon Fowler's description of the man he saw struggling with Martin and their knowledge of the history between Martin and defendant, the police began a manhunt for defendant.
 
 
 8
 Meanwhile, Martin was taken by defendant in her car to a vacant field somewhere in Clark County, Kentucky. Once there, defendant told Martin he was going to kill her and then himself. Believing that her only chance for survival was to pacify defendant, by convicing him that she still cared for him and wanted to resume their relationship, Martin agree to have sex with defendant.
 
 
 9
 Defendant drove Martin's car to a local motel, the Red Carpet Inn in Winchester, Kentucky, where he rented a room. Martin continued her charade, and she and defendant had sexual intercourse at least once, and possibly twice, that night. Defendant also told Martin that if she informed the police about the events of that night, he would hurt her four children.
 
 
 10
 The next morning, defendant wanted to go to a flea market. Martin agreed, but told defendant that she wanted to go home and clean up because she had dried blood on her from the gash on her head. Defendant agreed, and the two drove back to the Circle H Saloon where defendant's car was parked. They then drove their cars to Martin's residence.
 
 
 11
 Martin entered her residence alone and locked the door behind her. Being concerned that defendant might carry out his threats to harm her children, Martin immediately telephoned the home of her former mother-in-law, where her two sons were staying, and told her to keep the children in the home and lock the door. She also telephoned one of her two daughters and told her to lock her door. Martin then telephoned the police and reported the incident. The police arrived and transported Martin to a hospital where she received treatment consisting of approximately four stitches for the gash in her head and care for a suspected broken finger.
 
 
 12
 Defendant was arrested the following day. An investigation revealed that he was a convicted felon, having been convicted in the Pulaski (Kentucky) Circuit Court on January 3, 1990, of several felony offenses. Further, based upon Martin's recognition of the gun used by defendant during her abduction as one they had purchased from a pawnshop sometime before, the police were able to contact the owner of the pawnshop. He recalled defendant and Martin purchasing the firearm, and he was able to produce the firearm purchase forms from the sale of the firearm, a .22 caliber F.I.E. "Bounty Hunter" revolver, which was manufactured in Italy and assembled in Florida. The firearm purchase form also revealed that defendant had made a false statement when he filled out the form; namely, he had indicated that he had never been previously convicted of a felony.[1]
 
 B.
 
 13
 A federal grand jury issued a four-count indictment on April 7, 1994. Count one of the indictment charged defendant with armed carjacking under 18 U.S.C. Sec. 2119; count two alleged that defendant was a convicted felon in possession of a firearm under 18 U.S.C. Sec. 922(g); count three alleged the use of a firearm during and in relation to a crime of violence under 18 U.S.C. Sec. 924(c); and count four alleged that defendant made a false statement in connection with the acquisition of a firearm under 18 U.S.C. Sec. 922(a)(6).
 
 
 14
 On July 5, 1994, the government filed a notice of its intent to introduce evidence of defendant's prior bad acts under Fed. R. Evid. 404(b). Among the evidence the government sought to introduce under Rule 404(b) was testimony of an abduction and assault by the defendant of his former wife, Sharon Westfall, which was almost identical in its factual details to the assault in this case, and testimony concerning defendant's beating of Sharon Westfall a few days after her abduction and assault, which resulted in a felony conviction against defendant. Defendant filed an objection to the government's attempt to introduce prior bad acts evidence under Rule 404(b) on July 11, 1994.
 
 
 15
 Defendant's trial commenced on July 13, 1994. Prior to the voir dire of the jury venire, the district court, after hearing the arguments of counsel, ruled that the testimony concerning defendant's abduction and assault of his first wife was admissible under Rule 404(b), because it involved a distinct pattern of conduct by the defendant. On July 18, 1994, the jury found defendant guilty of all four of the counts charged against him. Defendant was sentenced on September 30, 1994, to 188 months imprisonment on count one; 120 months imprisonment on count two; 60 months imprisonment on count three; and 60 months imprisonment on Count four. The sentences on count one, count two, and count four, were to be served concurrently with each other, and the sentence on count three was to be served consecutively to the sentences imposed on counts one, two, and four, for a total sentence of 248 months imprisonment. This timely appeal followed.
 
 II.
 A.
 
 16
 Defendant argues that the evidence of serious bodily injury and possession of a firearm are insufficient to sustain his convictions on count one, two, and three. "'There is a very heavy burden"' placed upon a defendant challenging the sufficiency of the evidence underlying a conviction." United States v. Brewer, 36 F.3d 266, 268 (2d Cir. 1994). "'In a criminal case the standard of review for claims of insufficient evidence is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.""' United States v. Acosta-Cazares, 878 F.2d 945, 951 (6th Cir.) (citing United States v. Ellzey, 874 F.2d 324, 327-28 (6th Cir. 1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979), cert. denied, 493 U.S. 899 (1989)).
 
 
 17
 (1)
 
 
 18
 Defendant asserts that the evidence presented by the government was insufficient to sustain the jury's finding that he was in possession of a firearm. Specifically, he states:
 
 
 19
 No one but Linda Martin claimed to have seen [defendant] with a gun on the night of March 5, 1994. James Ball, the night clerk at the Red Carpet Inn, specifically remembered David Whitis coming in. He talked with Whitis for several minutes and did not see a gun. Tony Fowler, the government's "eyewitness" admitted, on cross-examination, that he never actually saw a gun on David Whitis. Furthermore, the police never retrieved a gun and the prosecution did not produce a gun at trial.
 
 
 20
 Brief of Appellant at 11-12.
 
 
 21
 However, "[e]ven though a gun is not recovered, eyewitness testimony may be sufficient for the government to meet its burden of proof under Sec. 921(a)(3), so long as it provides a rational basis for the jury to find that the object observed by eyewitnesses 'was, in fact, a firearm."' United States v. Jones, 16 F.3d 487, 490 (2d Cir. 1994). The defendant in Jones was convicted of bank robbery and armed bank robbery in violation of 18 U.S.C. Secs. 2113(a) and (d), using a firearm during a crime of violence in violation of 18 U.S.C. Sec. 924(c)(1), and possessing a firearm as a conviction felon in violation of 18 U.S.C. Sec. 922(g)(1). The defendant challenged the sufficiency of the evidence to sustain his convictions under Sec. 924(c)(1) and Sec. 922(g)(1). The Second Circuit held that the testimony of three eyewitnesses to the bank robbery, who admittedly had no familiarity with weapons, that the defendant "brandished a silver gun with a white handle ... was sufficient to permit a reasonable jury to infer that the object displayed by [the defendant] in the bank was a 'firearm."' Jones, 16 F.3d at 491.
 
 
 22
 Viewed in the light most favorable to the government, the testimony of Linda Martin was sufficient to permit the jury to reasonably infer that defendant possessed a firearm on the night of March 5, 1994. Martin not only saw defendant with a firearm as he rose up out of the back seat of her car on the night of March 5, 1994; she also recognized the gun as the .22 caliber revolver which she and defendant had "purchased" together less than a month before for his birthday. Moreover, Martin not only had the opportunity to observe the firearm in defendant's possession, she was also struck in the head with it as she and defendant struggled for possession of it. Therefore, we conclude that sufficient evidence sustains defendant's convictions of being a convicted felon in possession of a firearm (count two) and using a firearm during and in relation to a crime of violence (count three).
 
 
 23
 (2)
 
 
 24
 Defendant also argues that insufficient evidence exists to support his conviction of armed carjacking in violation of 18 U.S.C. Sec. 2119. He asserts that insufficient evidence exists to support the jury's finding that he inflicted serious bodily injury on Linda Martin on the night of March 5, 1994. He also asserts that in order to convict him under Sec. 2119 (count one), the government had to establish "beyond a reasonable doubt that [he] 1) while possessing a firearm, 2) by force [,] violence and intimidation [,] took 3) a motor vehicle which had previously traveled in interstate commerce, 4) resulting in serious bodily injury to Linda Martin." Brief of Appellant at 9.
 
 
 25
 The version of Section 2119 of Title 18 of the United States Code in effect at the time of defendant's indictment states:
 
 
 26
 Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--
 
 
 27
 (1) be fined under this title or imprisoned not more than 15 years, or both,
 
 
 28
 (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
 
 
 29
 (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both,.
 
 
 30
 18 U.S.C. Sec. 2119 (1994 Supp.). Further, 18 U.S.C. Sec. 1365 states:
 
 
 31
 "serious bodily injury" means bodily injury which involves--
 
 
 32
 (A) a substantial risk of death;
 
 
 33
 (B) extreme physical pain;
 
 
 34
 (C) protracted and obvious disfigurement; or
 
 
 35
 (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty.
 
 
 36
 18 U.S.C. Sec. 1365(g)(3)(1995 Supp.). On the other hand, 18 U.S.C. Sec. 1365 also states:
 
 
 37
 the term "bodily injury" means--
 
 
 38
 (A) a cut, abrasion, bruise, burn, or disfigurement;
 
 
 39
 (B) physical pain;
 
 
 40
 (C) illness;
 
 
 41
 (D) impairment of the function of a bodily member, organ, or mental faculty; or
 
 
 42
 (E) any other injury to the body, no matter how temporary.
 
 18 U.S.C. Sec. 1365(g)(4)(1995 Supp.)
 
 43
 In this case, sufficient evidence was presented to establish the essential elements of Sec. 2119 beyond a reasonable doubt. The essential elements of the armed carjacking statute are the first three set out by defendant above and do not include "resulting in serious bodily injury." Defendant has not challenged in this appeal the sentence imposed by the district court. He has challenged only the fact of his conviction, and therefore, the parties have not included in the record on appeal the evidence relevant to defendant's sentence. Accordingly, we conclude that sufficient evidence exists to support defendant's convictions on counts one, two, and three.
 
 B.
 
 44
 Defendant argues that the district court erred in allowing the introduction of evidence of his alleged commission of a prior crime under Fed. R. Evid. 404(b). During the trial, defendant's former wife, Sharon Westfall, testified that after her divorce from defendant, he stole her $400 paycheck from her and told her that she would have to meet him at his sister's house in Somerset, Kentucky, to get the money back. She testified that no one was home when she arrived at the house where she was to meet defendant. She got back into her car and as she started to leave, defendant suddenly came up out of the back seat with a gun. He told her to drive the car, and they travelled to an open field in the country where he threatened to kill her and himself. Finally, in order to placate defendant, Westfall gave into his demands and agreed to have sexual intercourse with him.[2]
 
 
 45
 In deciding to admit Ms. Westfall's testimony, the district court ruled:
 
 
 46
 The Court finds that the 1989 incident involving the alleged abduction, the testimony relating thereto by Ms. Westfall, is admissible under 404(b). The evidence will establish that the defendant intended to commit a similar crime here. The incidents were very similar, which I think would go to establish sort of a plan.
 
 
 47
 The probative value, getting to second step, the probative value of the 1989 evidence is enhanced because it helps to rebut the defense that the lady is lying and that there was no carjacking.
 
 
 48
 * * *
 
 
 49
 Now getting to the second phase, certainly, this is prejudicial to the defendant. However, it is not unduly prejudicial, and the Court would find that the probative value outweighs the prejudicial effect.
 
 
 50
 Transcript of Motions and Rulings at p. 14 (quoted in Appellee's Brief, at 12). Finally, just prior to Ms. Westfall's testimony, the district court overruled defense counsel's objection to the admission of her testimony under Rule 404(b) stating:
 
 
 51
 Well, I've previously made the determination that the probative value outweighs the prejudicial effect, and I think that determination is correct. I think this is proper for intent, motive, plan, and -- at least those three factors. And so I'm going to allow this testimony.
 
 
 52
 J.A. 246. Finally, after Ms. Westfall's testimony, the district court gave the following limiting instruction to the jury:
 
 
 53
 Members of the jury, you have just heard testimony that the defendant committed some acts other than ones charged in the indictment. You cannot consider this testimony as evidence that the defendant committed the crimes he is on trial for now. Instead, you can only consider it in deciding whether or not the defendant had the intent, the plan, or the motive to commit the act charged in Count One of the indictment. Do not consider it for any other purpose. Remember that the defendant is on trial here only for crimes charged in the indictment, not for these other acts. Do not return a guilty verdict unless the government proves the crimes charged beyond a reasonable doubt.
 
 
 54
 J.A. 250-51.
 
 
 55
 (1)
 
 
 56
 Defendant argues that the admission of Ms. Westfall's testimony was an abuse of the district court's discretion. According to defendant, "Westfall's testimony is simply not relevant to prove any of the events set forth in [Rule] 404(b)'s list of purposes which are exceptions to the general rule against allowing testimony of [a] defendant's prior bad acts." Brief of Appellant at 15. Defendant further asserts that even if Westfall's testimony was admissible under Rule 404(b), the admission of the evidence was an abuse of discretion under Fed. R. Evid. 403 because the evidence was more prejudicial than probative. Id. at 16.
 
 Rule 404(b) provides in relevant part:
 
 57
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...
 
 
 58
 Fed. R. Evid. 404(b). Under Rule 404(b), evidence of a defendant's criminal character or propensity is excluded because a jury could convict a defendant based on the conduct showing his criminal character or propensity rather than for the offense for which he is being tried. United States v. Acosta-Cazares, 878 F.2d 945, 948 (6th Cir.), cert. denied, 493 U.S. 899 (1989). However, evidence which satisfies one of the reasons enumerated in Rule 404(b) is admissible. Id. "[Rule 404(b)] is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." United States v. Blankenship, 775 F.2d 735, 739 (6th Cir. 1985). Furthermore, "[t]he list of permissible uses of evidence of other crimes or acts set forth in Rule 404(b) is neither exhaustive nor conclusive." United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir. 1986) (per curiam), cert. denied, 480 U.S. 922 (1987).
 
 
 59
 We will reverse a district court's admission of evidence under Rule 404(b) only for an abuse of discretion. Acosta-Cazares, 878 F.2d at 948. "In determining the admissibility of bad acts evidence under Rule 404(b), a trial judge is accorded 'broad discretion."' United States v. Vance, 871 F.2d 572, 576 (6th Cir.) (quoting United States v. Ebens, 800 F.2d 1422, 1433 (6th Cir. 1986), cert. denied, 493 U.S. 933 (1989)). "To admit evidence [under Rule 404(b)] for one of the permissible purposes, (1) there must be sufficient proof for the jury to find that the defendant committed the prior act; (2) the prior act must not be too remote in time; (3) if used to prove intent, the prior offense must be similar to the charged offense; (4) the prior act must be introduced to prove a material issue; and (5) the probative value must outweigh any prejudice." United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992) (per curiam), cert. denied, 114 S. Ct. 113 (1993)); see also United States v. Terry, 729 F.2d 1063, 1069 (6th Cir. 1984) ("[E]vidence of defendant's prior misconduct may be admitted to show motive, intent, absence of mistake or inadvertence, opportunity, preparation or knowledge, as long as the acts are similar in nature and close in time to the acts for which the defendant is being prosecuted") (citations omitted) (emphasis added).
 
 
 60
 In Colley v. Sumner, 784 F.2d 984 (9th Cir.), cert. denied, 479 U.S. 839 (1986), the defendant was charged with aggravated battery (sexual assault), which was alleged to have occurred on March 25, 1979. At defendant's trial, the prosecution presented prior bad acts testimony; namely, the prosecution presented testimony that the defendant had sexually assaulted another woman eight days prior to the attack of March 25, 1979, and at nearly the same location. The victim in the earlier assault also "described a modus operandi similar in other respects to the one alleged" to have been followed by the defendant on March 25, 1979. Colley, 784 F.2d at 987. The Ninth Circuit upheld the admission of the evidence stating that it "was relevant to prove both intent and identity." Id. at 990. The court further noted, "The testimony was especially probative of identity because ... it .... suggest[ed] that [the defendant] possessed a unique modus operandi." Id.; see also United States v. Phillips, 599 F.2d 134, 136 (6th Cir. 1979) ("Something more than repeated performance of the same class of crimes is required in evidencing a 'design' or 'plan' [for purposes of admissibility under Rule 404(b)] .... [T]here must either be an agreement to commit a series of crimes, a 'plan,' or there must be a distinctive pattern 'the device used must be so unusual and distinctive as to be like a signature."' (quoting McCormick, Evidence Sec. 157 at 328 (1954)).
 
 
 61
 In this case, although more than five years elapsed between the incident involving Sharon Westfall, and the incident involving Linda Martin, the incidents bore such striking similarity in their details as to constitute a unique modus operandi; namely, they were so unusual and distinctive that they were the equivalent of a signature. Thus, we conclude that the district court did not abuse its discretion in finding that Sharon Westfall's testimony was admissible for a proper purpose under Rule 404(b).
 
 
 62
 (2)
 
 
 63
 Again, our inquiry does not end here, however. "[W]hen presented with an objection [to the admission of evidence] under Rule 404(b), the district court should consider whether the probative value is outweighed by the evidence's potential for prejudicial effect as explained in Fed. R. Evid. 403." Acosta-Cazares, 878 F.2d at 950. Rule 403 provides:
 
 
 64
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 65
 Fed. R. Evid. 403. "A district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence." Vance, 871 F.2d at 576. As the Fourth Circuit has observed,
 
 
 66
 Such "undue prejudice would seem to require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence."
 
 
 67
 United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980), quoting Trautman, "Logical or Legal Relevancy--A Conflict in Theory," 5 Vand. L. Rev. 385, 410 (1951-52)). Furthermore, "[t]he prejudicial effect of the evidence may be reduced by the manner in which the evidence is introduced, e.g., elimination of inflammatory or unnecessary details from the presentation, and by cautionary instructions from the trial judge." Vance, 871 F.2d at 577.
 
 
 68
 Here, the district court "made the determination that the probative value [of Ms. Westfall's testimony] outweigh[ed] the prejudicial effect" and took affirmative steps to reduce the prejudicial effect of Ms. Westfall's testimony. Not only did the district court give the jury an appropriate limiting instruction at the conclusion of Ms. Westfall's testimony, it also eliminated inflammatory or unnecessary details from her testimony. Specifically, the district court permitted Ms. Westfall to testify about her abduction at the hands of the defendant, the details of which were virtually identical to the abduction for which defendant was on trial. The district court, however, did not permit Ms. Westfall to testify about her subsequent beating by defendant. Therefore, we conclude that the admission of Ms. Westfall's testimony was not an abuse of discretion by the district court under either Fed. R. Evid. 404(b) or Fed. R. Evid. 403.
 
 III.
 
 69
 For the reasons stated, defendant's convictions are AFFIRMED.
 
 
 
 *
 Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Defendant testified in his own behalf at his trial. He denied abducting Martin and stated that she and Fowler were setting him up. He testified that he agreed to meet with Linda Martin at the Circle H Saloon late in the evening of March 5, 1994. He stated that he and Linda Martin met and he drove her car, with Martin as a passenger, to the Red Carpet Inn. He also denied ever having a gun that evening. He also stated that Martin purchased the .22 caliber revolver and that he only filled out the forms because she was purchasing it for him as a birthday present and did not have her driver's license with her. He admitted, however, that he lied, and that he knew he was lying, when he indicated on the form that he had never been previously convicted of a felony
 
 
 [2]
 On cross-examination, Ms. Westfall admitted that she had not filed criminal charges against defendant as a result of this incident because she had no proof